UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANPREET SINGH, (A# 245-235-689),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:26-cv-00048 DJC SCR<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of India currently detained at the Golden State Annex ICE Detention Facility, within this judicial district.  ECF No. 1 at 2.  Petitioner entered the United States without inspection near Lukeville, Arizona, on or about September 17, 2023.  ECF No. 6-1 at 4.  Border Patrol agents encountered petitioner shortly after and arrested him.  Id.  Immigration officials charged petitioner as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placed him in removal proceedings.  Id.  On September 18, 2023, officials released petitioner on his own recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act."  Id. at 6.

1

Petitioner's current detention began on September 4, 2025, when ICE agents arrested him during a routine check-in at the Fresno ICE office.  ECF No. 1 at 5-6; ECF No. 6-1 at 12-15.  Prior to the visit, immigration officials conducted a record check that showed the Fresno Police Department arrested petitioner on May 27, 2025, on several charges, including robbery under California Penal Code § 211.  ECF No. 6-1 at 13; see also id. at 17-18.

Petitioner filed the instant § 2241 petition on January 5, 2026, challenging his detention without bond under the Due Process Clause of the Fifth Amendment.  ECF No. 1.  Petitioner states he has never missed an ICE appointment and hopes to continue to pursue his asylum case.  Id. at 5-6.  By way of relief, petitioner requests the Court order his release or, in the alternative, order his release within 30 days unless Respondents schedule a hearing before an immigration judge ("IJ") where the government bears the burden of establishing a risk of danger or flight by clear convincing evidence.  Id. at 17.

In their answer to the petition, respondents ask that the petition be denied on grounds that petitioner's detention is mandatory and authorized under both 8 U.S.C. § 1225(b)(2) and § 1226(c).  ECF No. 6.  Respondents cite certain cases supporting their interpretation of § 1225(b)(2), including the BIA's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025).  Id at 2-3.  Respondents further argue petitioner falls within the mandatory detention provisions of § 1226(c)(1)(E), a provision enacted in the Laken Riley Act ("LRA"), on account of his May 2025 arrest for robbery for which charges are still pending.  Id. at 3.

The undersigned appointed counsel due to the information in the answer regarding petitioner's pending criminal charges.  ECF No. 9.  In the counseled reply, petitioner argues he is not subject to § 1225(b)(2) because immigration officials released him on his own recognizance pursuant to 8 U.S.C. § 1226(a)(2)(B).  Id. at 3-4.  Petitioner further asserts that because he acquired a liberty interest upon release, due process required a pre-deprivation hearing, or "[a]t the very least" a post-deprivation hearing where the government must establish danger or flight risk by clear and convincing evidence, taking into consideration ability to pay and alternatives to detention.  Id. at 5-9 (discussing test from Mathews v. Eldridge, 424 U.S. 319 (1976)).

////

2

**DISCUSSION**

### I.  Applicable Detention Statute

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Respondents argue that petitioner's detention is mandatory and permitted under both 8 U.S.C. § 1225(b)(2) and § 1226(c).[1]  The undersigned agrees with petitioner that his release "[i]n accordance with section 236 of the Immigration and Nationality Acton," i.e., 8 U.S.C. § 1226, ECF No. 6-1 at 6, precludes the application of § 1225(b)(2) here.  See Lopez v. Lyons, No. 2:25-cv-3174 DJC CKD, 2025 WL 3124116, at *2 (E.D. Cal. Nov. 7, 2025) (rejecting argument that § 1225 governed where "the Order of Release on Recognizance specifically states that Petitioner was released pursuant to section 1226"); Garcia Mariagua v. Chestnut, No. 1:25-cv-1744 DJC CSK, 2025 WL 3551700, at *2 (E.D. Cal. Dec. 11, 2025) (same).

Petitioner did not address whether his detention is authorized by 8 U.S.C. § 1226(c)(1)(E). Congressed enacted the LRA in January 2025, expanding mandatory detention to include anyone who (1) is inadmissible pursuant to paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"  See Pub. L. No. 119–1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)).

////

---

[1]  The undersigned construes these as arguments in the alternative because the two statutory schemes "are mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025).  This is the case even if petitioner's detention is mandatory under § 1226(c)(1)(E). "Section 1226(c) carves out exceptions to § 1226(a), requiring certain people be subject to mandatory detention." Garcia v. Noem, 803 F. Supp. 3d 1064, 1075 (S.D. Cal. 2025).

The LRA's first statutory condition is met because immigration officials charged petitioner as inadmissible under 1182(a)(6)(A)(i).  ECF No. 6-1 at 4.  The undersigned also agrees with respondents that petitioner's pending robbery charge under Penal Code § 211 qualifies as a "theft" offense under the Act and satisfies the second statutory condition.[2]  Cf. E.C. v. Noem, No. 2:25-cv-1789 RFB BNW, 2025 WL 2916264, at *6, *11 (D. Nev. Oct. 14, 2025) (agreeing that § 1226(c)(1)(E)(ii) "on its face" applied to petitioner's arrest for robbery under Utah state law but applying § 1226(a) due to subsequent acquittal).  Accordingly, petitioner is currently subject to mandatory detention under § 1226(c)(1)(E).

Finally, while neither party alerted the Court to this factual development, the undersigned observes that Petitioner's EOIR case information page reflects he received an order of removal on February 19, 2026, and appealed the IJ's decision to the BIA on March 18, 2026.[3]  See https://acis.eoir.justice.gov/en/caseInformation.  As the appeal is still pending, petitioner's order of removal is not administratively final and his detention has not yet shifted from § 1226(c) to § 1231(a).  See Avilez v. Garland, 69 F.4th 525, 534 (9th Cir. 2023) (holding that § 1226(c), like § 1226(a), "applies throughout the administrative and judicial phases of removal proceedings").

**II.    Due Process Analysis**

**A.  As-Applied Framework**

The undersigned construes the petition as raising an as-applied, procedural due process challenge to the constitutionality of petitioner's mandatory detention.  See ECF No. 1 at 9-13.  Petitioner was detained on September 4, 2025, seven months ago.  ECF No. 1 at 5, ¶ 19.  Petitioner alleges, and respondents do not dispute, that petitioner has never received a bond hearing to determine whether his detention is justified based on danger or flight risk.  Id., ¶ 20.

---

[2]  Petitioner has not argued that petitioner's charges do not qualify as a "theft" offense. Penal Code § 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

[3]  The undersigned takes judicial notice of petitioner's EOIR Case Information.  See Fed. R. Evid. 201(b)-(c) (Courts "may take judicial notice on its own" of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

As respondents note, the Supreme Court upheld the facial constitutionality of mandatory § 1226(c) detention in Demore v. Kim, 538 U.S. 510, 531 (2003). ECF No. 6 at 3. The Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Id. at 513, 529 n.12, 530. Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

While observing "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)," the Ninth Circuit has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). The Ninth Circuit has, however, expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Indeed, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." Lopez v. Garland, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted); see also Doe v. Becerra, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("[D]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible."). In other words, the Supreme Court's "conclusion [in

5

Demore] that § 1226(c) is constitutional in some of its applications does not mean that the Court 'does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [ ] detention without a bond hearing.'" Carballo v. Andrews, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting Perera v. Jennings, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original).

Other Circuit Courts of Appeal have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). The Second Circuit recently held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds these authorities persuasive and agrees that Demore does not bar an as-applied challenge to prolonged, mandatory detention under § 1226(c). The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process arguments.

**B. Legal Standard**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

Petitioner has a clear liberty interest in securing his freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—

lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690.  Further, "an individual's private interest in 'freedom from *prolonged* detention' is 'unquestionably substantial.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011) (emphasis added).  Demore forecloses petitioner's request for a pre-deprivation hearing, 538 U.S. at 531, but the undersigned will consider whether due process requires a post-deprivation hearing on account of his allegedly prolonged detention.

To determine what process is due, petitioner urges the court to apply the test from Mathews, 424 U.S. 319.  See ECF No. 13 at 5-7.  Respondents do not identify a preferred test or make any attempt to apply the facts of petitioner's detention to a particular procedural due process framework.   The undersigned has considered the various other tests developed by district courts within the Ninth Circuit, and finds that Mathews provides the appropriate test for due process challenges to prolonged detention under § 1226(c).  The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the additional factors identified by the Third Circuit in German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020),[4] and various district courts when deciding whether detention under § 1226(c) has become unreasonably prolonged.[5]

Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

---

[4]  In German Santos, the Third Circuit declined to adopt a presumption of reasonableness or unreasonableness of any duration and instead evaluated duration along with three other factors: (1) whether the detention is likely to continue; (2) the reasons for the delay, such as a detainee's request for continuances; and (3) whether the noncitizen's conditions of confinement are "meaningfully different[ ] " from criminal punishment.  965 F.3d at 211.

[5]  For example, the undersigned recognizes that the assigned District Judge recently endorsed the eight-factor test from Martinez v. Clark, No. C18-1669 RAJ MAT, 2019 WL 5968089 (W.D. Wash. May 23, 2019), report and recommendation adopted, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).  See Keo v. Chestnut, et al., No. 1:26-cv-1192 DJC CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026).  The undersigned agrees the Martinez factors are relevant to this as-applied challenge and incorporates them into the Mathews analysis below.

### C. Mathews Analysis

Private Interest:  As noted above, petitioner's "private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'"  Rodriguez Diaz, 53 F.4th at 1207 (quoting Singh, 638 F.3d at 1208).  Petitioner here has been detained for roughly seven months.  While the Ninth Circuit has not addressed when mandatory detention under § 1226(c) becomes prolonged, it has referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Other district courts have found mandatory detentions of similar lengths to violate due process.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"); Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's seven-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation").  Thus, the current duration of petitioner's detention weighs in petitioner's favor.

The likely duration of petitioner's future detention also supports additional process.  Petitioner appealed his order of removal to BIA only a few weeks ago, which suggests that he "faces an undetermined, but likely significant, period of mandatory detention through the appeals process."  Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing).  Further, while district courts must be sensitive to "dilatory tactics" by noncitizens seeking to put off their deportation, petitioner's appeal to the BIA is a "natural part of the process" that does not diminish his significant private interest.  Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003), abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018); see also German Santos, 965 F.3d at 211 ("[W]e do not hold a[ noncitizen's] good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceeding."); Keo v. Chestnut, et al., 2026 WL

747117, at *3 ("Petitioner's appeals to the BIA and the Ninth Circuit are similarly proper avenues for relief Petitioner is entitled to pursue.").

The remaining private interest factors courts commonly consider are neutral.[6] Petitioner has not put forth any evidence related to the conditions in the Golden State Annex, and "[t]he Court lacks sufficient information to assess the likelihood that Petitioner's removal proceedings will result in a final order of removal and, therefore, declines to do so." Keo, 2026 WL 747117, at *3 (citation omitted). Accordingly, despite the duration of petitioner's detention being on the lower end of what is considered "prolonged," the first factor still tilts in his favor.

Risk of Erroneous Deprivation: The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors petitioner for several reasons. First, petitioner has not received a detention hearing at any point. ECF No. 1 at 5, ¶ 20. "In the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).

Second, in evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory or regulatory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention. See Rodriguez Diaz, 53 F.4th at 1209-10 (finding risk of erroneous deprivation low where the petitioner "was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker"). As petitioner notes

[6] Considerations of the nature of the crimes and period of incarceration are inapposite because petitioner has not been convicted. Cf. Keo, 2026 WL 747117, at *3 (finding these factors "weighed in the Government's favor as Petitioner was convicted of serious crimes and his current detention does not outlast the approximately twenty-five year sentence he served"). Unlike the bases for mandatory detention under 8 U.S.C. § 1226(c)(1)(A)-(D), subsection (c)(1)(E), as amended by the LRA, can be triggered by a mere charge or arrest.

here, he has "no statutory or regulatory pathway . . . to seek a bond hearing before a neutral decisionmaker." ECF No. 1 at 5, ¶ 21. "[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests." Black, 103 F.4th at 152. For these reasons, the second Mathews factor also weighs in petitioner's favor.

Government Interest: Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens],'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515), and that the detention of noncitizens during removal proceedings serves the legitimate government purpose of preventing flight, Prieto-Romero, 534 F.3d at 1065 (citing Demore, 538 U.S. at 528). However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). Further, the "effort and cost required to provide Petitioner with procedural safeguards is minimal . . .." Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Accordingly, the final Mathews factor also favors petitioner.

**D. Relief**

Having determined that the Mathews factors favor petitioner, the undersigned concludes that petitioner is entitled to a bond hearing. At the hearing, the Government should bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. See Keo, 2026 WL 747117, at *4 n.2 (E.D. Cal. Mar. 17, 2026) (collecting cases applying this burden of proof in similar cases).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ordered to provide petitioner (A# 245-235-689) with a bond hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of this order.  In the event petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

3. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If petitioner is granted release on bond, respondents shall return all of petitioner's documents and possessions at the time of release.

5. The Clerk of the Court be directed to enter judgment in petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties

////

////

////

////

11

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 3, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE